FORST, J.,
dissenting.
I respectfully dissent. The salient testimony from the first officer to make contact with appellee (“the Officer”) is that he was dispatched to respond to a robbery in the vicinity where he first spotted appellee’s vehicle. As he followed the vehicle, he saw that the driver turned off the vehicle’s headlights .while the vehicle was still in motion on the roadway. The vehicle then pulled into a driveway. Appellee exited the vehicle and began to walk away. The Officer identified himself as a police officer and told him to stop. Appellee continued to walk away, and subsequently began to run. He was ultimately apprehended by one of the three additional officers who had responded to a call for assistance by the Officer. At the hearing on appellee’s motion to suppress, the Officer testified that he personally observed the traffic offense of driving with no headlights while the vehicle was in motion and it was dark out. Appellee was charged with, several offenses, including a traffic citation for “headlights.”
There was no evidence offered in contradiction, to the Officer’s testimony that ap-pellee was driving without headlights. Nonetheless, as noted in the majority opinion, the trial court granted.appellee’s motion to suppress physical evidence obtained after a search... The sole explanation for this ruling was set forth orally as follows:
Notwithstanding the doctrines and holding of Proctor [apparently referencing State v. Proctor, 161 So.3d 409 (Fla. 5th DCA 2014) ], the Court having heard the evidence of the four involved officers and the argument of respective counsel for both the State of Florida and the defense, and after carefully considering and weighing the testimony and credibility of the four officers involved, I find as a matter of fact and law, that the State of Florida has not met it’s [sic] required burden of establishing the requisite probable cause in the arrest and search of the defendant, the initial stop as well and/or the search and seizure in connection therewith.
It is possible that the trial court believed the stop was a “pretextual stop.” In Kehoe v. State, 521 So.2d 1094 (Fla.1988), abrogated, by Dobrin v. Fla. Dep’t of Highway Safety & Motor Vehicles, 874 So.2d 1171 (Fla.2004), cert. denied, 543 U.S. 957, 125 S.Ct. 455, 160 L.Ed.2d 320 (2004), and in State v. Daniel, 665 So.2d 1040 (Fla.1995), receded from by Holland v. State, 696 So.2d 757 (Fla.1997), the Florida Supreme Court responded to situations “[w]hen the police realize that they lack a founded suspicion [and therefore] sometimes attempt to justify a stop on some obscure traffic violation.” Kehoe, 521 So.2d at 1096. The Court held in Kehoe that in such cases, “[t]he state must show that ... a reasonable officer would have stopped the vehicle absent an additional invalid purpose.” Id. at 1097. In Daniel, the Court narrowed its holding in Kehoe, stating that “the reasonable officer test applies exclusively where a stop is justified solely by a minor infraction, generally those that are purely regulatory in nature and that do not address conduct potentially harmful to other persons or property.” Daniel, 665 So.2d at 1043.
There would be a problem with this Kehoe/Daniel approach if that is what the trial court relied upon. It is no longer *1003 good law. Pursuant to the decision of the United States Supreme Court in Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), even if the Officer planned on stopping appellee’s vehicle for another reason (the Officer was responding to a BOLO in conjunction with a robbery), “[t]he actual subjective motivation of the individual officer ■ involved is irrelevant and should hot factor into an ordinary probable-cause Fourth 'Amendment analysis.” Proctor, 161 So.3d at 411 (citing Whren, 517 U.S. at 813). The Florida Supreme Court has accepted that the Whren objective test overrules the .Kehoe/Daniel approach. Holland v. State, 696 So.2d 757, 759 (Fla.1997) (holding that the subjective intent of the officer is no longer determinative; “[wjhen applying the objective test, generally the only determination to be made is whether probable cause existed for the stop in question” and that, per Whren, “a violation of traffic law provided sufficient probable cause to make the subséquent search and seizure reasonable”); see also 11 Fla. Prac., DUI Handbook § 4:19 (2015-2016 ed.) (“The current test for determining whether a stop for, a traffic violation is valid simply requires a determination of whether there is probable cause. This is the ‘could stop’ test.”).
An observation by the Officer that the appellee’s headlights had been turned off while the car was still moving on the road, at night, is sufficient to satisfy the “could stop”/objective test. Granted, “ ‘[jjudges ... are not wallflowers or potted plants,’ and a trial court is not required to accept .testimony that is clearly incredible or unreliable.” O.I.C.L. v. Dep’t of Children & Families, 169 So.3d. 1244, 1251 (Fla. 4th DCA 2015) (quoting Tagatz v. Marquette Univ., 861 F.2d 1040, 1045 (7th Cir.1988)), review granted sub nom. O.I.C.L. v. Fla. Dep’t of Children & Families, SC15-1570, 2015 WL 6854614. (Fla. Oct. 30, 2015). In the instant case, there is nothing in the record, in the brief decision of the trial court, or in .the similarly brief opinion of the majority, that,indicates why the Officer’s unrebutted testimony that he observed a traffic violation prior to the stop should be deemed untrustworthy, let aione “clearly incredible or. unreliable.” Thus, I am unable to join the majqrity; I would instead reverse, the trial court’s grant of the appellee’s motion to suppress.